UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MOHAWK FIELD SERVICES, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 13-CV-394-JED-TLW |
| WPT LLC, | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

The Court has for its consideration WPT LLC's Motion to Dismiss and, in the Alternative, Transfer and Brief in Support Thereof (Docs. 19 and 24) and the parties' Joint Motion to Consolidate (Doc. 42).

### BACKGROUND

This litigation arises out of a contract for the construction of an ethylene cracking furnace located in Sulphur, Louisiana. Plaintiff Mohawk Field Services, Inc. ("Mohawk"), an Oklahoma corporation, submitted a bid proposal to WPT LLC ("WPT") to perform the construction work on the furnace. WPT and Mohawk entered into a contract on December 1, 2011, whereby Mohawk agreed to perform the work in exchange for a lump sum payment of $10,587,816.

During construction of the furnace, a dispute arose regarding its completion by the contractual deadline. WPT reassigned significant portions of Mohawk's work under the contract to alternate contractors. WPT claims that, as a result of the need to hire alternate contractors, it incurred significant costs for which Mohawk was responsible. On November 8, 2012, Andrew Kenner, Vice President of manufacturing for Westlake Chemical Corporation, WPT's parent company, wrote to Mohawk, asserting a right to setoff under the contract. Kenner stated that Mohawk had caused damages to WPT of over $5 million for lost production and $2,824,665 in

sums paid to the alternate contractors. On November 15, 2012, Mohawk responded that it too had incurred additional costs on the project and stated that it was compiling information and documentation for WPT's review. On November 28, 2012, Kenner responded challenging these additional costs alleged by Mohawk and stating that he wished to schedule a meeting to discuss the issues raised by Mohawk. On November 29, 2012, Mohawk again wrote WPT, stating, among other things, that it was entitled to over $5 million under the contract for work it had completed. Unbeknownst to Mohawk, WPT retained a construction scheduling expert at that time to evaluate the merits of Mohawk's assertions.

On December 6, 2012, Mohawk filed a lawsuit against WPT in Tulsa County, Oklahoma, but did not obtain a summons for service. Communication between Mohawk and WPT continued thereafter, but Mohawk did not reveal that it had filed a lawsuit. On March 6, 2013, the parties held a meeting in Houston to engage in settlement discussions. WPT's construction expert presented his findings to Mohawk during the March 6 meeting. The parties did not reach a settlement at that time but agreed to continue negotiations. On March 11, 2013, the Tulsa County court dismissed Mohawk's lawsuit for failure to obtain service. On March 15, 2013, Mohawk refiled its state court lawsuit but again did not request a summons be issued. Shortly thereafter, on April 2, 2013, WPT produced over 3,000 pages of documents to Mohawk pursuant to Mohawk's request for documents supporting the costs associated with the alternate contractors' work. On May 9, 2013, Mohawk provided three documents in support of its claim and offered to produce more supporting documents if WPT would agree to pay the undisputed portion of the amount owed to Mohawk for the work it completed. In response, WPT disputed the accuracy of the "undisputed amount" provided by Mohawk.

On May 21, 2013, Mohawk's counsel advised WPT's counsel that he had been directed to proceed with litigation and advised that a lawsuit had already been filed in Tulsa County in March. Two days later, WPT verified that it had not yet been served with the Tulsa County lawsuit and filed its own suit in Texas state court. Mohawk was served with that lawsuit on May 29, 2013. Mohawk served WPT with its Oklahoma lawsuit on June 12, 2013.

On June 21, 2013, Mohawk removed the Texas suit to federal court in the Southern District of Texas-Houston Division. That suit was styled *WPT, L.L.C. v. Mohawk Field Services, Inc.*, 4:13-CV-01824. On July 2, 2013, WPT removed the Tulsa County case to this Court. WPT now seeks dismissal of this case in favor of the Texas case, arguing that the first-to-file rule should not be applied. WPT seeks, in the alternative, a transfer of this case to a district court in Texas or Louisiana.

On January 30, 2014, the Texas case was transferred to this District pursuant to an Opinion and Order entered by U.S. District Judge Melinda Harmon granting Mohawk's request for transfer. In transferring the case, Judge Harmon relied upon well-established precedent which holds that the court in which the first filed action is pending should determine the issue of whether the first-to-file rule should be followed. The transferred case is now pending before this Court as 4:14-CV-00042-JED-PJC. The parties have jointly requested that the two cases be consolidated because they are based upon the same contract and underlying factual issues. (*See* Doc. 42, at 2).

**DISCUSSION**

I. **Defendant's Motion to Dismiss and, in the Alternative, Transfer (Docs. 19 and 24)**

   A. **The First-to-File Rule**

WPT argues that this Court should disregard the first-to-file rule based upon Mohawk's conduct and dismiss the action so that the Texas case (which has now been transferred to this Court) can proceed. Mohawk contends that the circumstances do not warrant departure from the first-to-file rule.

The Tenth Circuit follows the first-to-file rule. *See Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982) (explaining "general rule that when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case"). "The first to file rule is a 'discretionary doctrine,' and a lower court's decision to apply the first to file rule is reviewed for an abuse of discretion." *Cherokee Nation v. Nash*, 724 F. Supp. 2d 1159, 1166 (N.D. Okla. 2010) (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)). While the Tenth Circuit has not spoken on the issue, many courts have held that the first-to-file rule may be dispensed with where it is equitable to do so because of bad faith conduct, such as the filing of an anticipatory suit. *See, e.g., Nash*, 724 F. Supp. 2d at 1166 n.11 (discussing such exceptions).

WPT urges the Court to find that Mohawk's conduct in filing this case, remaining silent, and benefiting from WPT's production of documents justifies dispensing with the first-to-file rule. The Court has thoroughly reviewed the parties' arguments and authorities and finds that Mohawk's conduct does not amount to bad faith and does not otherwise justify departure from the first-to-file rule. Generally speaking, a lawsuit will not be considered an anticipatory filing unless a party situated as a natural defendant files a declaratory judgment action in its choice of

4

forum in anticipation of a lawsuit being filed against it.  *See, e.g., Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Georgia*, 189 F.3d 477 (10th Cir. 1999); *Nacogdoches Oil & Gas, L.L.C. v. Leading Solutions, Inc.*, 2007 WL 2402723, at *3 (D. Kan. Aug. 17, 2007).  Such is not the case here.  While Mohawk did file suit without notifying WPT, its filing in Oklahoma does not amount to forum shopping because its posture in this case is that of a natural plaintiff; that is, Mohawk affirmatively seeks as damages an amount that it is yet to be paid under the contract.  WPT points out that it too has alleged a claim for breach of contract in the second-filed action, not merely a claim for declaratory judgment.  However, an examination of WPT's contract claim reveals that WPT asserts a right to offset and does not seek damages that Mohawk would be required to affirmatively pay.  In other words, it appears that any damages WPT claims in that case would simply be deducted from the amount owed to Mohawk.

In light of the foregoing, this lawsuit is not an anticipatory filing.  Moreover, Mohawk's conduct in the course of the parties' negotiation does not amount to bad faith.  The facts, as stated by both parties, strongly suggest that both parties had a genuine interest in settling the dispute without the need for litigation.  Accordingly, the Court finds that the circumstances do not warrant departure from the first-to-file rule and Mohawk's lawsuit will not be dismissed.

### B.  Transfer pursuant to 28 U.S.C. § 1404

WPT alternatively asks the Court to transfer this case to a district court in Texas or Louisiana pursuant to 28 U.S.C. § 1404(a).  WPT argues that either a Texas or Louisiana forum is preferable to Oklahoma primarily because of convenience to the parties and witnesses and the ability to compel the attendance of witnesses.

Under 28 U.S.C. § 1404(a), a court may transfer a case to any judicial district in which it could originally have been filed "for the convenience of parties and witnesses."  The Tenth

Circuit has identified several factors that should be considered by a district court when ruling on a motion to transfer:

> the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws, the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). "Unless the moving party carries its burden to prove inconvenience to the parties and witnesses and the balance is 'strongly' in favor of the moving party, the plaintiff's choice of forum should not be disturbed." *Sleepy Lagoon, Ltd. v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1312-13 (N.D. Okla. 2011) (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)). "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (internal quotation marks omitted).

Of the Tenth Circuit factors, the convenience of witnesses is the "most important" in the § 1404 analysis. *Id.* at 1169. To demonstrate such inconvenience, the movant must: "(1) identify the witnesses and their locations; (2) indicate the quality or materiality of the[ir] testimony; and (3) "show[ ] that any such witnesses were unwilling to come to trial ... [,] that deposition testimony would be unsatisfactory[,] or that the use of compulsory process would be necessary." *Id.* (internal quotation marks omitted); *see also* 15 Wright, Miller & Cooper, § 3851, at 227–28 ("If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, ... the application for transferring the case should be denied....").

6

WPT has failed to meet its burden of demonstrating that a transfer under § 1404 should trump Mohawk's choice of forum. Most notably, WPT has not provided sufficient facts or analysis as to why Oklahoma would be an inconvenient forum for witnesses. Instead, WPT merely relies upon general allegations regarding the witnesses' location in the Texas and Louisiana forums. In contrast, Mohawk has demonstrated that an Oklahoma forum may indeed result in lower travel costs for witnesses (should they attend trial) and the parties. WPT has also failed to demonstrate that deposition testimony from out-of-state witnesses would be unsatisfactory. Accordingly, the Court finds that the circumstances favor this Court's retention of this case. WPT's request for a transfer pursuant to § 1404 is denied.

## II.     Joint Motion to Consolidate (Doc. 42)

The parties have filed a joint motion to consolidate this case with the recently transferred Texas case, now styled in this Court as *WPT LLC v. Mohawk Field Services, Inc.*, 4:14-CV-00042. The parties agree that the cases raise the same issues of law and fact and involve the same parties.

Under Fed. R. Civ. P. 42, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." The decision whether to consolidate is committed to the sound discretion of the district court. *C.T. v. Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1346 (D. Kan. 2008) (citing *Shump v. Balka*, 574 F.2d 1341, 1344 (10th Cir. 1978). "In exercising its discretion, the court should take into consideration whether judicial efficiency is best served by consolidation." *Id*.

The Court finds that judicial economy is best served by consolidation of the cases at issue. The cases are essentially identical and involve the same parties, witnesses, and evidence.

The parties' joint motion to consolidate is therefore granted. *Mohawk Field Services, Inc. v. WPT LLC*, Civil Action No. 4:13-CV-00394-JED-TLW is hereby consolidated with *WPT LLC v. Mohawk Field Services, Inc.*, Civil Action No. 4:14-CV-00042-JED-PJC and will be hereafter styled as *Mohawk Field Services, Inc. v. WPT LLC*, Civil Action No. 4:13-CV-00394-JED-TLW.

## CONCLUSION

**IT IS THEREFORE ORDERED THAT**:

WPT LLC's Motion to Dismiss and, in the Alternative, Transfer and Brief in Support Thereof (Docs. 19 and 24) is **denied**.

The parties' Joint Motion to Consolidate (Doc. 42) is **granted**. The Court Clerk is directed to consolidate *Mohawk Field Services, Inc. v. WPT LLC*, Civil Action No. 4:13-CV-00394-JED-TLW and *WPT LLC v. Mohawk Field Services, Inc.*, Civil Action No. 4:14-CV-00042-JED-PJC into a single action styled as *Mohawk Field Services, Inc. v. WPT LLC*, Civil Action No. 4:13-CV-00394-JED-TLW.

**IT IS FURTHER ORDERED** that, in light of the Court's ruling with respect to WPT's motion to dismiss, the Court requests that the parties file a second joint status report within 21 days of the date of this Opinion and Order which states, in particular, the time needed by the parties to engage in complete and full discovery. The Court will thereafter enter a scheduling order or, if necessary, set the matter for a scheduling conference prior to entering a schedule.

**SO ORDERED** this 12th day of February, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE